YATES, Presiding Judge.
This case involves postdivorce proceedings.
The trial court divorced the parties on September 19, 1988, incorporating a settlement agreement into the final judgment of divorce. The agreement consisted of 31 pages; in it, the parties stipulated, among other things, that the parties would share joint legal custody of their two minor children and that the wife would have physical custody. As it pertains to this appeal, the agreement stated:
*744 “3.8. Child, Support:
“Husband shall pay the amount of Five Hundred Dollars ($500.00) per month, per child, toward the support of the minor children of the parties. Said payments shall be payable on or before the first day of each month commencing on October 1, 1988, and continuing on the first day of each month thereafter as long as guaranteed alimony to the Wife is due as provided herein. Upon termination of the guaranteed alimony as provided herein, child support shall increase to Six Hundred Dollars ($600.00) per month, per child, and shall continue to be paid on the first day of each month until further order of the Court.
“In addition, Husband shall pay the following expenses for the children as additional child support:
“(a) Private School Tuition and Expenses: Husband shall pay directly to the private school or daycare the tuition and expenses billed by the private school and/or daycare to Husband on behalf of the minor children....
“(b) Health Insurance/Minor Children: Effective as of the date of this Agreement, Husband shall continue to maintain comprehensive medical and hospitalization insurance for the minor children and to maintain the same until a termination of the child support obligation imposed by this Agreement.... In addition to the health insurance provided herein, Husband shall be responsible for and shall pay all medical, dental, orthodontic, ophthalmological, and prescription drug expenses on behalf of the minor children. All dental and orthodontic treatment (other than emergencies) shall require Husband’s approval prior to treatment.
[[Image here]]
“(d) College Education Expenses: Husband, a trustee of the minor children, shall be responsible for payment on behalf of the minor children of all expenses, including, tuition, room, board, books, fees, transportation and living expenses of a minor child attending a college or university of their choice to obtain an undergraduate degree.
[[Image here]]
“Section 4.1. Guaranteed Alimony:
“Husband shall pay the amount of $950.00 per month commencing October 1, 1988 and continuing for eighteen (18) consecutive months as guaranteed alimony. In addition thereto, at Husband’s option, Husband shall pay upon the expiration of eighteen (18) months, the sum of $5000.00 cash directly to Wife, or, $950.00 per month for an additional six (6) months. The guaranteed alimony herein shall be contingent upon Wife being a part-time student at a local Montgomery institution during the last quarter of 1988 and a full-time student in 1989, wherein she proceeds toward obtaining a teaching certificate in her former field or another field. Alimony shall terminate in the event Wife is not normally progressing as a student toward the certification goal (except for injury, sickness or health problems).
“Section 4.2. Resewe Alimony Based on Husband’s Income:
“In addition to the above guaranteed alimony, Husband shall pay to Wife for a period of ten (10) years after the entry of the final decree of divorce additional alimony on a monthly basis as follows:
“(1) Commencing January 1, 1989, at anytime Husband’s taxable income during any calendar year (calendar year defined herein as January 1 through December 31 each year) exceeds the sum of $72,000.00; and, Husband’s taxable income for any one month exceeds $6,000.00, Husband shall pay a sum equal to twenty percent (20%) of the excess taxable income over the $6,000.00 *745 on the first $30,000.00 of excess taxable income; in addition, a sum equal to ten percent (10%) of the excess taxable income over the next $30,000.00; and, in addition, five percent (5%) of the excess taxable income over the next $60,000.00. However, reserve alimony shall not exceed $12,000.00 in additional alimony in any one month. ‘Taxable income’ herein for reserve alimony purposes is defined as adjusted gross income as reflected on line 30 of Form 1040 of the U.S. Individual Income Tax Return for 1987. Excluded from the above will be taxable income generated by assets received by Husband through gift or inheritance from Husband’s parents.
“(2) Wife and her advisor shall be entitled to inspect all books, records and income tax returns of the Husband between February 15 and March 1st of each year to insure compliance with Part IV, Section 4.2.
[[Image here]]
“Section 8.1. Education Trust:
“The minor children born of this marriage have an established education trust of which Husband is the trustee. The education trust of the minor children has purchased a residence at 3195 East Fernway Drive, Montgomery, Alabama, to be owned by the education trust.... Wife shall be entitled to the sole and exclusive use and possession of said property until her remarriage or until she is no longer a custodial parent of the minor children.... The residence shall remain in the education trust for the minor children and shall be subject to sell [sic] at any time following [J.J.’s] attaining the age of nineteen (19) years (if not sold before as provided herein). Husband, individually and as trustee of the minor children, shall enter into a contract with Wife, providing that upon the sale of the residence, fifty percent (50%) of the appreciation in value over the purchase price of $94,750.00 shall be paid to Wife upon the sale of said property. For the purpose of determining the total appreciation in value, the following formula shall be used:
“The purchase price of $94,750.00 shall be deducted from the sales price of said residence, less any real estate commission due on said sale and closing charges. The education trust of the minor children shall be entitled to add to the purchase price of $94,750.00 any capital improvements made to the residence (capital improvements being defined as improvements under the Internal Revenue Service Code that would increase the tax basis in said property). The difference between the sales price, less any real estate commissions due and the purchase price of $94,750.00, plus capital improvements shall be divided one-half to Wife and one-half to the education trust of the children. The education trust of the minor children shall pay all taxes and insurance on said property.”
The parties signed an “Addendum” agreement, on September 12, 1988, which stated in part:
“4. Should [the husband] as trustee for [the children] determine that it would be in the children’s best interest that their residence be changed, then following a request by [the wife], the custodial parent of said children, [the husband] shall enter into whatever agreements may be necessary including a contract for sale of the residence at Fernway Drive and reapplication of the proceeds of sale toward the purchase of an additional residence. This provision is purely discretionary with [the husband] as Trustee for the children and is included to provide for the flexibility of changing residences in the event the children’s need so justifies.”
The wife filed several contempt petitions in 1989, alleging that the husband had *746 failed to comply with provisions of the divorce judgment; the parties entered into an agreement, which was ratified by the court in December 1989. On April 28, 1999, the wife moved to have the husband held in contempt for violating provisions of the 1988 judgment and agreements, and also on that date she sought a modification of child support, alleging that there had been a material change in circumstances. She alleged, among other things, that the husband had continuously failed to comply with provisions contained in the agreements, including the provision relating to the husband’s paying private-school tuition and expenses; providing health insurance for the wife and the children; maintaining a life insurance policy on himself -with the children as beneficiaries and a separate policy naming the wife as beneficiary; paying reserve alimony and miscellaneous debts; and appropriately using the children’s educational trust to provide a residence for the wife and the children. She filed an amended petition in July 1999, alleging that the husband was in arrears in his child-support payments; that the ar-rearage totaled $2,800; and that he had failed to comply with a judgment entered on May 18, 1999, by the circuit court of Lauderdale County regarding a claim under the Uniform Reciprocal Enforcement of Support Act (URESA). Following a hearing on a motion to change venue and on a counter petition by the husband, this case was transferred to the Circuit Court of Montgomery County and was set there for trial.
Following a two-day ore tenus trial, the court, on March 30, 2000, entered a detailed 30-page order, finding that there had been a change in circumstances that warranted a modification of the divorce judgment. The order stated, in part,
“2. That, henceforth, [the husband] shall not be liable for the private school expenses of the children unless he agrees to their being enrolled in private, rather than public, school. If he agrees that attending private school is in a child’s best interest, he shall retain the right to approve the school which the child attends but he shall not unreasonably refuse to approve a school selected by [the wife],
“3. That [the husband] is liable to Lake Forest Country Day School for any balances remaining for the boys’ prior matriculation there and he shall hold [the wife] harmless from any liability therefor.
“4. That [the husband], individually and as trustee for his sons, is liable for the mortgage payments on the Lake Bluff home, plus all taxes, assessments, homeowners’ association dues, and hazard insurance, until such time as the younger son, [J.J.], reaches his nineteenth birthday.
“5. That, due to the changed circumstances resulting from the move to Illinois and the purchase of a much more expensive home than that originally agreed upon, [the husband] shall be entitled to a credit of $600.00 per month toward his child support obligations, so long as he makes the payments provided in Paragraph 4, supra.
“6. That, all the proceeds from the sale of the Fernway home having been poured into the purchase of the Lake Bluff home, [the wife] is not entitled to a share in the Fernway proceeds at this time but will be entitled to a proportionate share in the proceeds of the Lake Bluff home when it is sold. •
“7. That, effective April 1, 2000, [the husband] shall be obligated to [the wife] for child support for their two sons in the amount of $1,650.00, against which should be credited the $600.00 per month credit provided in Paragraph 5, supra, which payments shall continue in that amount until [the husband] begins *747 to pay the college expenses of [L.J.], or [L.J.] reaches his nineteenth birthday, whichever first occurs, at which time child support payments for [him] shall cease. Upon the cessation of child support payments for [L.J.], but not later than March 1, 2000, [the husband] shall be obligated to [the wife] for child support for their son [J.J.] in the amount of $1,000.00, against which should be credited the credit provided in Paragraph 5, supra, which payments shall continue in that amount until [the husband] begins to pay the college expenses of [J.J.], or [he] reaches his nineteenth birthday, whichever first occurs, at which time child support payments shall cease. All payments shall be made through the office of the Deputy Register of this Court.
“8. That, as previously determined in Lauderdale County action number CS-98-298, [the husband] was indebted to [the wife] in unpaid child support in the amount of $657.16, through April 30, 1999, plus $1,135.75 in unpaid prescription drug expenses. Since that time, another $13,200.00 in support has accrued. After crediting all payments made through February 4, 2000, [the husband] is in arrears $2,246.75 in child support, which arrearage he shall pay at the rate of $100.00 per month, beginning April 1, 2000, and continuing until paid in full.
“9. That reference is made hereby to a separate order entitled ‘Order of Continuing Income Withholding for Support,’ the entry of which is required of this Court by the provisions of Section 30-3-61 of the Code of Alabama and which specifically is incorporated herein as a part of this Decree.
“10. That [the husband] no longer has any obligation to maintain insurance on his life with [the wife] as beneficiary.
“11. That, within thirty days of the date of this Order, [the husband] shall furnish to [the wife], through counsel, substantiation that he has in effect not less than $30,000.00 in life insurance with the boys’ trusts as beneficiaries. He shall reconfirm this coverage on an annual basis, on [J.J.’s] birthday, until [J.J.] reaches nineteen.
“12. That, [the husband] is indebted to [the wife] in the amount of $62,609.61 for ‘reserve alimony’ and a judgment is awarded to her and against him in that amount.
“13. That [the husband] is not indebted to [the wife] for any alimony on account of any injury suffered by her to date.
“14. That each son shall have the right to select which college he attends and, in accordance with the terms of the Agreement incorporated into the Decree, [the husband] shall be responsible for the payment of all of [each child’s] college expenses, including tuition, room, board, books, fees, transportation and living expenses while at college, so long as that son remains a full-time student (summers excluded) in an accredited four-year college or university and maintains at least a 2.0 overall grade point average, based on a 4.0 scale.
“15. That [the wife] is awarded a judgment against [the husband] in the amount of $10,000.00 in partial compensation for the fees and expenses of her attorney in this matter.
“16. That all other relief is DENIED.”
After conducting a hearing on postjugment motions filed by the husband and the wife, the court, on June 23, 2000, entered an amended order, stating, in part:
“[The husband] raised questions about the Court’s calculation of the so-called ‘Reserve Alimony.’ In its Order, the Court said: ‘We have [the husband’s] income tax returns. Under terms of the *748 Agreement, the figures to be used for calculating reserve alimony were “adjusted gross income,” as that appeared on those returns.’
“He points out that the returns for 1991, 1992, 1993, 1994, and 1995 were joint returns with his second wife, [Judy Jester]. The Court notes that there was no entry on the ‘Wages, salaries, tips, etc.,’ line in 1989 or 1990. No W-2s were attached to the copies of the returns introduced into evidence. Perhaps those entries represented the earnings of [the second wife], but can the Court make that assumption? It is equally as likely that the entries represent a salary paid to [the husband] by his P.C. The S corporation returns .for those years (Former Wife’s Exhibit 24) show salaries paid in excess of those reported on the 1040s without showing to whom they were paid. Further, the returns after 1995 continue to show large amounts on line 7.
“The evidence is inconclusive and for that reason, the Court’s decision stands.
[[Image here]]
“From [the wife’s] side, the argument is made that the Court should have awarded interest on this alimony, retroactive to when it became due. Alimony payments in a sum certain become judgments when [the payments] are not made. In this instance, no sum certain was ever established and, hence, interest could never begin to accrue.”
In addition, the court determined that it had erred in the calculation of the “reserve alimony” by using “a threshold amount of $70,000.00 when it should have used $72,000.00.” Accordingly, the court adjusted the amount owed by the husband to $61,415.02 and entered a judgment for that amount. The husband moved to supplement the record on November 14, 2000, asserting that the W-2 forms for his second wife for the years 1991 through 1995 had been inadvertently omitted from the exhibits at trial; the motion was granted by the circuit court on November 21, 2000.
The husband appeals, arguing, among other things, that the court erred in its calculation of reserve alimony; in disallowing him credits toward his alimony obligation; and in finding that each child had the right to select the college he would attend. The wife cross-appealed, arguing that the court, erred in failing to award interest on the husband’s reserve-alimony obligation; in failing to find the husband in contempt; and in awarding only “partial compensation for her attorney.”
As to matters involving the modification of an alimony award, our supreme court has stated:
“ ‘It is well established in Alabama that the modification of an alimony provision based upon changed circumstances is a matter that rests within the circuit court’s sound discretion. Furthermore, the ore tenus standard is applied to the ruling of the circuit court; thus, a presumption of correctness attaches to the ruling and the ruling will not be reversed unless it is not supported by the evidence and is clearly an abuse of the court’s discretion.’ ”
Ex parte Millard, 683 So.2d 1002, 1003 (Ala.1996) (citation omitted). Additionally, matters related to child support, including subsequent modifications of a child-support order, rest soundly within the trial court’s discretion and will not be disturbed on appeal, absent a showing that the ruling is so unsupported by the evidence as to be plainly and palpably wrong. Berryhill v. Reeves, 70S So.2d 505 (Ala.Civ.App.1997); Williams v. Braddy, 689 So.2d 154 (Ala.Civ.App.1996). Also, in a modification proceeding, the award of an attorney fee is within the discretion of the trial court. *749 Thrasher v. Thrasher, 674 So.2d 595 (Ala.Civ.App.1995).
A detailed recitation of the evidence would serve no useful purpose. Suffice it to say we find evidence to support the trial court’s determination regarding a modification of child support and in modifying other provisions related to the children’s educational expenses and to the use of the educational trust for payments on the Illinois residence. We find the issues raised by the wife’s cross-appeal without merit, and we pretermit discussion of those issues.
As to the husband’s argument regarding the reserve alimony, it appears that the trial court erred in its calculation of the amount owed by the husband. The trial court specifically stated in its amended order that “No W-2s were attached to copies of the returns introduced into evidence and that [the court] could not determine whether the earnings reported on the income tax returns for 1991 through 1995 ‘represented earnings of the second wife.’ ” In reviewing the exhibits, we note that the second wife’s W-2 forms were included with the Form 1040 income-tax returns filed in 1994 and 1995. Further, the trial court has approved a supplemental record that contains the W-2 forms for the wife for the years 1991 through 1995. Therefore, we reverse that portion of the judgment pertaining to the reserve alimony owed by the husband. On remand, the court should allow a reduction of the taxable income based on the second wife’s earnings for 1991 through 1995. In addition, the recalculation should use the stipulated formula based on taxable income exceeding $72,000 per year and taxable income that exceeds $6,000 per month within that year. All other portions of the judgment are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.